1  PAUL M. KAPLAN, ESQ. (California State Bar No. 139606)
   235 Montgomery Street, Suite 813
2  San Francisco, CA 94104
   Telephone: (415) 393-9966
3  Facsimile: (415) 393-9999
   E-Mail:    pklaw@sbcglobal.net
4
   JONATHAN M. KAUFMAN, ESQ. (California State Bar No. 104576 E-filing
5  The Law Offices Of Jonathan M. Kaufman
   220 Montgomery Street, Suite 976
6  San Francisco, CA 94104
   Telephone: (415) 956-4765
7  Facsimile: (415) 956-1664
   E-Mail:    jonathan-kaufman@sbcglobal.net
8
   Attorneys for Plaintiff
9
                  UNITED STATES DISTRICT COURT
10
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
11

12                                                     1679
   NOORULLAH KHAN,                        Case No.
13
            Plaintiff,                    COMPLAINT FOR DECLARATORY
14                                        JUDGMENT AND INJUNCTION  MMC
        vs.
15
   EMILIO T. GONZALEZ,
16 Director, United States Citizenship
   and Immigration Services,
17
            Defendant
18
   _____/
19

20      Plaintiff alleges:

21      1. This action is brought pursuant to the provisions of 28 U.S.C. § 1331 and 5 U.S.C.

22 §§ 701 - 706.

23      2. Defendant is the Director of the United States Citizenship and Immigration Services,

24 (USCIS), an agency in the Department of Homeland Security, charged with the duty to administer

25 and enforce the Immigration and Nationality Act, including the adjudication of an application to

26 adjust status to lawful permanent resident pursuant to 8 U.S.C. § 1159(b).

27

28                                   1

3. Plaintiff is a citizen of Afghanistan.

4. On January 19, 1999 plaintiff was granted asylum by the Immigration and Naturalization Service. See Exhibit A.

5. On December 14, 2001 plaintiff applied for adjustment of status by filing an application in the manner prescribed in 8 C.F.R. § 209.2. See Exhibit B.

6. On February 22, 2008 the USCIS denied plaintiff's application for adjustment of status. The USCIS found that plaintiff was not eligible to adjust status under 8 U.S.C. § 1159(b) because he was inadmissible to the United States under 8 U.S.C. § 1182(a)(3)(B)(i)(I) and 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd). There is no administrative appeal from the USCIS's decision. See Exhibit C.

7. The finding that plaintiff is inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(I) and 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd) is arbitrary, capricious, and contrary to law.

8. Plaintiff is an asylee statutorily eligible to adjust his status to lawful permanent resident pursuant to 8 U.S.C. § 1159(b).

WHEREFORE, plaintiff prays judgment.

1. Declaring that plaintiff is an asylee statutorily eligible to adjust his status to lawful permanent resident pursuant to 8 U.S.C. § 1159(b).

2. Declaring that the USCIS's finding that plaintiff is inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(I) and 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd) is arbitrary, capricious, and contrary to law.

3. Enjoining the USCIS to adjudicate, forthwith, plaintiff's application for adjustment of status, finding that plaintiff is not inadmissible under 8 U.S.C. § 1182(a)(3)(B)(i)(I) and 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).

1   4. Awarding plaintiff his costs and reasonable attorneys fee incurred in this action;

2   5. Granting such other and further relief as may be appropriate.

3   Dated: March 27, 2008

4

5   JONATHAN M. KAUFMAN
    Attorney For Plaintiff

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A



**U.S. Department of Justice**
Immigration and Naturalization Service
Asylum Office
P.O. Box 77530
San Francisco, CA  94107

---

File #:  A72664182
ZSF-022
Date:    **12 JAN 1999**

COPY

Mr. Noorullah Khan
6248 Lorraine Avenue
Stockton, Ca. 95210

### Asylum Approval

Dear Mr. Khan:

This refers to your request for Asylum in the United States, Form I-589.  This office previously issued you a letter to notify you that your request for asylum had been recommended for approval, pending the results of the mandatory, confidential investigation of your identity and background.

It has been determined that you have established eligibility for asylum.   Attached please find a completed Form I-94, Arrival Departure Record, indicating that you have been granted asylum status in the United States pursuant to §208(a) of the Immigration and Nationality Act  (INA) as of January 8, 1999. You have been granted asylum in the United States for an indefinite period.  This grant of asylum includes your dependents listed above who are present in the United States, were included in your asylum application, and for whom you have established a qualifying relationship by a preponderance of evidence.

In order to request derivative asylum status for any spouse or child who was not included in your asylum request, you must submit a Form I-730, Refugee and Asylee Relative Petition, to the Immigration and Naturalization Service (INS).

You are eligible for employment authorization for as long as you remain in asylum status.  Your dependents listed above are also eligible for employment authorization, so long as they retain derivative asylum status.  However, you must apply for and obtain an Employment Authorization Document (EAD) as evidence of your eligibility to work in the United States.  To obtain an EAD, you must submit to the INS a Form I-765, Application for Employment Authorization.  We suggest that you include a copy of this letter when applying for work authorization as an asylee.

If you plan to depart the United States, you must obtain permission to return to the United States before you leave this country.   If you do not obtain permission, you may be unable to reenter the United States,

or you may be placed in proceedings where you will be required to establish your asylum status. You may apply for a Refugee Travel Document on a Form I-131, Application for Travel Document.

Asylum status does not give you the right to remain permanently in the United States. Asylum status may be terminated if you no longer have a well-founded fear of persecution because of a fundamental change in circumstances, you have obtained protection from another country, or you have committed certain crimes or engaged in other activity that makes you ineligible to retain asylum status in the United States. See INA § 208(c)(2) and 8 C.F.R. §208.22(a).

You may apply for lawful permanent resident status under section 209(b) of the Immigration and Nationality Act after you have been physically present in the United States for a period of one year after the date you were granted asylum status. To apply for lawful permanent residence status, you must submit to the INS a Form I-485, Application to Register Permanent Residence or Adjust Status.

You must notify the INS of any change of address within ten days of any such change. You may obtain a Form AR-11 at your nearest post office or INS office to comply with this requirement.

You may obtain any of the forms noted above at an INS District Office or INS Forms Center. Instructions with or on the forms explain how to complete the forms, what documents to attach and where to send the completed forms.

Sincerely,

Emilia Bardini
Acting Director
San Francisco Asylum Office

COPY

Enclosure: I-94 Card

(Rev. 12/3/97)

**U.S. Department of Justice**
Immigration and Naturalization Service

OMB NO. 1115-0086

**Request for Asylum in the United States**

## DO NOT WRITE IN THIS BLOCK - FOR INS USE ONLY

| Asylum Office: | Basis of Asylum Claim: | Action: |
|---|---|---|

INS-FCO:

Received date:

G-28 or VOLAG#

Basis of Asylum Claim:
1. ☐ Race
2. ☐ Religion
3. ☐ Nationality
4. ☐ Membership in a Particular Social Group
5. ☐ Political Opinion

Action:
Asylum: ☐ Granted ☐ Denied
Date:_____

Withholding of deportation: ☐ Granted ☐ Denied
Date:_____

Adjudicating Officer

## PART A - INFORMATION ABOUT YOU

1. Alien Registration Number: *(if applicable)*

2. Name: *(Family name in CAPS)* *(First)* *(Middle)*
   KHAN    NOORULLAH

   Other names used: *(include maiden name or aliases)*

3. Address in the U. S.: *(Number and Street, Apt. #)*
   1810   WEST St:   Apt.#1

   *(City or Town)* *(State)* *(Zip Code)*
   BERKELEY   CA   94702

4. Address *prior to coming to U.S.:* *(Number and Street, Apt. #)*
   KHOST

   *(City or Town)* *(Province or State)* *(Country)*
   KHOST   PAKTIA   AFGHANISTAN

5. Sex: ☒ Male ☐ Female
6. Marital Status: ☒ Single ☐ Married ☐ Divorced ☐ Widowed

7. Date of Birth: *( Mo. /Day /Yr.)*
   07-14-1964

8. Place of Birth: *(City or Town)*
   PAKTIA   AFGHANISTAN

   *(Province)* *(Country)*
   AFGHANISTAN

9. Nationality: at Birth: AFGHAN
   at Present: AFGHAN
   Other:_____
   If stateless, how did you become stateless?

10. Race/Ethnic or Tribal Group: AFGHAN

11. Religion: ISLAM

12. Arrival in the U. S.:
    Date: *(Mo./Day/Yr.)* 6-11-93
    Place: *(City/State)* SAN DIEGO   CA
    ☐ Not in the U.S.

13. Current Immigration Status: *(Crewman, Stowaway, Student, Visitor or Other)*
    ASYLUM   APPLICANT
    Date authorized stay expires: *(Mo./Day/Yr.)*

14. Social Security Number: *( if applicable)*

15. Telephone Number:
    Home *(Area Code):* (      )-(      )
    Work *(Area Code):* (      )-(      )

## PART B - INFORMATION ABOUT YOUR FAMILY

16. List your spouse and all your unmarried children under the age of 21 :

| Name: | A-Number: (If Applicable) | Sex | Date of birth: | Place of birth: | If in U.S.: Date/Place of Arrival |
|---|---|---|---|---|---|
| NONE    (Spouse) | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

If in the U. S., are your spouse/children included in your request for asylum:

Children          Spouse

3.   Have you applied for asylum in the U.S. before?

☒ No    ☐ Yes *(Date_____ INS office_____Results - Granted/Denied)*

## PART D - OTHER INFORMATION

4.   Have you traveled to the United States before?  How many times?_____

☒ No    ☐ Yes *(If so, give date, purpose and duration of trip.)*

5.   List all current travel or identity documents in your possession such as national passport, refugee convention travel document, safe conduct, or national identity card:

| Document type | Document number | Issuing country or authority | Date of issue | Date of expiration |
|---|---|---|---|---|
| | NONE | | | |
| | | | | |
| | | | | |

6.   Date of departure from your country of nationality *(Mo./Day/Yr.)*
5-6-1993

27.   Was exit permission required to leave your country?

☒ No    ☐ Yes *(If yes, obtained by whom)*

8.   After leaving your home country, did you travel through or reside in any other country before entering the U.S.?

☐ No    ☒ Yes *(If yes, identify each country, length of stay, purpose of stay, address, reason for leaving,  and whether you are entitled and willing to return to that country for residence purposes.)*

I   TRAVELLED MEXICO

9.   Have you returned to your country of claimed persecution since your departure ? How many times?_____

☒ No    ☐ Yes *(If so, give date,  purpose and duration of trip.)*

0.   Have you applied for asylum or refugee status in any other country?

☒ No    ☐ Yes *(Date_____Country_____Results - Granted/Denied)*

1.   Have you been recognized as a refugee by another country or by the United Nations High Commissioner for Refugees?

☒ No    ☐ Yes *(If yes, Date_____ Country_____ )*

Have you ever caused harm or suffering to any person because of his/her race, religion, nationality, membership in a particular social group, or political opinion or ordered or assisted in such acts?

☒ No   ☐ Yes *(If yes, describe nature of the incidents and your own involvement.)*

33. Please provide any additional statement relevant to your case.

SEE ATTACHED DECLARATION

## PART E - SIGNATURE

Under penalty of perjury, I declare that the above and all accompanying documents are true and correct to the best of my knowledge and belief.

_____          12-07-93
*Signature of applicant*                    *Date*

**Signature of person preparing form if other than above:**
I declare that this document was prepared by me at the request of the applicant and is based on information provided by the applicant.

*Print Name* _____     *Address* _____

*Signature* _____     *Date* _____ *G-28 or VOLAG #* _____

Applicant is not to sign the application below until he or she appears before an Asylum Officer of the Immigration and Naturalization Service for examination. I _____ swear (affirm) that I know the contents of this application that I am signing including the attached documents; that they are true to the best of my knowledge; and that corrections numbered ( ) to ( ) were made by me or at my request and that I signed this application with my full, true name:

_____
*(Complete and true signature of applicant)*

Signed and sworn to before me by the above-named applicant at _____ on _____
                                                          *(Month)    (Day)    (Year)*

_____
*(Signature and title of interviewing officer)*

NOORULLAH    KHAN

### D E C L A R A T I O N

I was born and raised in KHOST which is located in province of
PAKTIA, AFGHANISTAN. I was forced to leave the country to save my life
by the agents of HEZB-i-ISLAMI  Afghanistan.

When the Russians invaded Afghanistan in December 1979,like
every Afghan I was greately shocked and angered.I decided to fight
them and joined Hezb-i-Islami Afghanistan.Later on due to ideological
differences,I left the Hezb-i-Islami and joined Harakat-i-Inquilab-i-
Islami under the leadership of Maulavi Nasrullah Mansoor.I use to guard
the posts along with other Mujahideen made by the Harakat and took part
in fight.When the Russians left and the Govt: of Dr.Najibullah fell in
the spring of 1992.We thought to rebuild the nation which was wounded
by Russians and their proteges.This dream fo rebuilding afghanistan was
shattered by the Hezb-i-Islami who believed that they have the birth
right to rule Afghanistan and who donot agree with them should be
annihilated.The commamders of Hezb against me since I left the organizatioɪ
and plan to kill me,but because fo Harakat could not do that.

Our beloved leader of Harakat-i-Inquilab-i-Islami was made
Governor of Paktia after independance I joined his squad of personal
bodyguards.Hezb-i-Islami wanted to kill Moulavi Nasrullah Mansoor and
tried a number of times but was not successful.In the spring of 1993
when we were coming from Kabul,we were attacked by the agents of Hezb-i-
Islami.They used rocket launchers and one of them hit the vehicle on
which our beloved leader was travelling.

We were arrested by the Hezb-i-Islami.First they wanted to kill
us then decided to take us to CHARA SIAH,head quarters of Hezb-i-Islami.

On the way they were attacked by the group of Mujahids from
Engineer Ahmad shah's group.Some of them ran away and we were freed.I

came back to Khost.

Moulavi Nasrullah Mansoor's death was a great loss and big blow
to our organization.Hezb-i-Islami sent a message to me that I should
join them or face the consequences.They also threatened the other
people who refused to work with them.A month later a group of unknown
people attacked our house at night I was not home.Fortunately no one
was hurt.The Hezb sent a message that next time I will not be lucky
if I donot join them.quite a few of other members of Harakat were killed
by the Hezb.I decided to leave the country and came to Pakistan.I knew
that they can still follow me there and decided to go to another country
and on first oppurtunity came to U.S.

# EXHIBIT B

**U.S. Department of Justice**
Immigration and Naturalization Service

OMB No. 1115-0053
**Application to Register Permanent Residence or Adjust Status**

## START HERE - Please Type or Print

### Part 1. Information about you.

| Family Name | KHAN | Given Name | NOORULLAH | Middle Initial | |

**Address - C/O**

| Street Number and Name | 5722 BAYVIEW AVE | | Apt. # | |

City **RICHMOND**

State **CALIFORNIA**      Zip Code **94804**

Date of Birth (month/day/year) **7/14/65**      Country of Birth **AFGHANISTAN**

Social Security # **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**      A # (if any) **72664182**

Date of Last Arrival (month/day/year) **1/8/99**      I-94 # **90450930205**

Current INS Status **ASYLEE**      Expires on (month/day/year) **N/A**

### Part 2. Application Type.    *(Check one)*

I am applying for adjustment to permanent resident status because

a. ☐ an immigrant petition giving me an immediately available immigrant visa number has been approved (attach a copy of the approval notice), or a relative, special immigrant juvenile, or special immigrant military visa petition filed with this application will give me an immediately available visa number if approved.

b. ☐ My spouse or parent applied for adjustment of status or was granted lawful permanent residence in an immigrant visa category which allows derivative status for spouses and children.

c. ☐ I entered as a K-1 fiance(e) of a U.S. citizen whom I married within 90 days of entry, or I am the K-2 child of such a fiance(e) (attach a copy of the fiance(e) petition approval notice and the marriage certificate).

d. ☒ I was granted asylum or derivative asylum status as the spouse or child of a person granted asylum and am eligible for adjustment.

e. ☐ I am a native or citizen of Cuba admitted or paroled into the U.S. after January 1, 1959, and thereafter have been physically present in the U.S. for at least 1 year.

f. ☐ I am the husband, wife, or minor unmarried child of a Cuban described in (e) and am residing with that person, and was admitted or paroled into the U.S. after January 1, 1959, and thereafter have been physically present in the U.S. for at least 1 year.

g. ☐ I have continuously resided in the U.S. since before January 1, 1972.

h. ☐ Other-explain _____

I am already a permanent resident and am applying to have the date I was granted permanent residence adjusted to the date I originally arrived in the U.S. as a nonimmigrant or parolee, or as of May 2, 1964, whichever is later, and:    *(Check one)*

i. ☐ I am a native or citizen of Cuba and meet the description in (e), above.

j. ☐ I am the husband, wife or minor unmarried child of a Cuban, and meet the description in (f), above.

Form I-485 (09-09-92)N      *Continued on back.*

COPY

**FOR INS USE ONLY**

| Returned | Receipt |

Resubmitted

Reloc Sent

Reloc Rec'd

☐ Applicant Interviewed

**Section of Law**
☐ Sec. 209(b), INA
☐ Sec. 13, Act of 9/11/57
☐ Sec. 245, INA
☐ Sec. 249, INA
☐ Sec. 1 Act of 11/2/66
☐ Sec. 2 Act of 11/2/66
☐ Other _____

**Country Chargeable**

**Eligibility Under Sec. 245**
☐ Approved Visa Petition
☐ Dependent of Principal Alien
☐ Special Immigrant
☐ Other _____

**Preference**

**Action Block**

**To Be Completed by Attorney or Representative, if any**
☐ Fill in box if G-28 is attached to represent the applicant
VOLAG#
ATTY State License #

## Part 3.  Processing Information

**A.** City/Town/Village of Birth   KHOST

Your mother's first name   SHAHZADGUIE

Current occupation   MANAGER STORE

Your father's first name   ABDULLA

Give your name exactly how it appears on your Arrival/Departure Record (Form I-94)
KHAN NOORULLAH

Place of last entry into the U.S. (City/State)
TEXAS

In what status did you last enter (Visitor, Student, exchange alien, crewman, temporary worker, without inspection, etc.)?
EWI

Were you inspected by a U.S. Immigration Officer?   ☐ Yes   ☒ No

Nonimmigrant Visa Number   N/A

Consulate where Visa was issued   N/A

Date Visa was issued (month/day/year)   N/A

Sex:  ☒ Male   ☐ Female

Marital Status:  ☐ Married   ☒ Single   ☐ Divorced   ☐ Widowe

Have you ever before applied for permanent resident status in the U.S.?   ☒ No   ☐ Yes (give date and place of filing and final disposition):

**B.** List your present husband/wife, all of your sons and daughters (if you have none, write "none". If additional space is needed, use separate paper). N/A

| Family Name   N/A | Given Name | Middle Initial | Date of Birth (month/day/year) |
|---|---|---|---|
| Country of Birth | Relationship | A # | Applying with you?  ☐ Yes   ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you?  ☐ Yes   ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you?  ☐ Yes   ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you?  ☐ Yes   ☐ No |
| Family Name | Given Name | Middle Initial | Date of Birth (month/day/year) |
| Country of Birth | Relationship | A # | Applying with you?  ☐ Yes   ☐ No |

List your present and past membership in or affiliation with every political organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place since your 16th birthday. Include any foreign military service in this part. If none, write "none". Include the name of the organization, location, dates of membership from and to, and the nature of the organization. If additional space is needed, use separate paper.

NONE IN THE UNITED STATES HOWEVER I HAVE BEEN AN ACTIVE MEMBER OF
HARAKAT-I-INQUILAB-ISLAMI AGAINST HAZB-i-ISLAMI IN AFGHANISTAN AND
BY REVIEWING THE MERITS I WAS GIVEN ASYLUM.

## Part 3.  Processing Information  *(Continued)*

Please answer the following questions. (If your answer is "Yes" on any one of these questions, explain on a separate piece of paper.  Answering "Yes" does not necessarily mean that you are not entitled to register for permanent residence or adjust status).

1.  Have you ever, in or outside the U.S.:
    a.  knowingly committed any crime of moral turpitude or a drug-related offense for which you have not been arrested?
    b.  been arrested, cited, charged, indicted, fined, or imprisoned for breaking or violating any law or ordinance, excluding traffic violations?
    c.  been the beneficiary of a pardon, amnesty, rehabilitation decree, other act of clemency or similar action?
    d.  exercised diplomatic immunity to avoid prosecution for a criminal offense in the U.S.?    ☐ Yes  ☒ No

2.  Have you received public assistance in the U.S. from any source, including the U.S. government or any state, county, city, or municipality (other than emergency medical treatment), or are you likely to receive public assistance in the future?    ☐ Yes  ☒ No

3.  Have you ever:
    a.  within the past 10 years been a prostitute or procured anyone for prostitution, or intend to engage in such activities in the future?
    b.  engaged in any unlawful commercialized vice, including, but not limited to, illegal gambling?
    c.  knowingly encouraged, induced, assisted, abetted or aided any alien to try to enter the U.S. illegally?
    d.  illicitly trafficked in any controlled substance, or knowingly assisted, abetted or colluded in the illicit trafficking of any controlled substance?    ☐ Yes  ☒ No

4.  Have you ever engaged in, conspired to engage in, or do you intend to engage in, or have you ever solicited membership or funds for, or have you through any means ever assisted or provided any type of material support to, any person or organization that has ever engaged or conspired to engage, in sabotage, kidnapping, political assassination, hijacking, or any other form of terrorist activity?    ☐ Yes  ☒ No

5.  Do you intend to engage in the U.S. in:
    a.  espionage?
    b.  any activity a purpose of which is opposition to, or the control or overthrow of, the Government of the United States, by force, violence or other unlawful means?
    c.  any activity to violate or evade any law prohibiting the export from the United States of goods, technology or sensitive information?    ☐ Yes  ☒ No

6.  Have you ever been a member of, or in any way affiliated with, the Communist Party or any other totalitarian party?    ☐ Yes  ☒ No

7.  Did you, during the period March 23, 1933 to May 8, 1945, in association with either the Nazi Government of Germany or any organization or government associated or allied with the Nazi Government of Germany, ever order, incite, assist or otherwise participate in the persecution of any person because of race, religion, national origin or political opinion?    ☐ Yes  ☒ No

8.  Have you ever engaged in genocide, or otherwise ordered, incited, assisted or otherwise participated in the killing of any person because of race, religion, nationality, ethnic origin, or political opinion?    ☐ Yes  ☒ No

9.  Have you ever been deported from the U.S., or removed from the U.S. at government expense, excluded within the past year, or are you now in exclusion or deportation proceedings?    ☐ Yes  ☒ No

10.  Are you under a final order of civil penalty for violating section 274C of the Immigration Act for use of fraudulent documents, or have you, by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the U.S., or any other immigration benefit?    ☐ Yes  ☒ No

11.  Have you ever left the U.S. to avoid being drafted into the U.S. Armed Forces?    ☐ Yes  ☒ No

12.  Have you ever been a J nonimmigrant exchange visitor who was subject to the 2 year foreign residence requirement and not yet complied with that requirement or obtained a waiver?    ☐ Yes  ☒ No

13.  Are you now withholding custody of a U.S. Citizen child outside the U.S. from a person granted custody of the child?    ☐ Yes  ☒ No

14.  Do you plan to practice polygamy in the U.S.?    ☐ Yes  ☒ No

Form I-485 Rev. 09-09-92)N                    *Continued on back*

**Part 4.  Signature.**    *(Read the information on penalties in the instructions before completing this section.  You must file th.*
*application while in the United States.)*

I certify under penalty of perjury under the laws of the United States of America that this application, the evidence submitted with it, is all true and correct. I authorize the release of any information from my records which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

| Signature | Print Your Name | Date | Daytime Phone Number |
|---|---|---|---|
| X | | | |

**Please Note:** *If you do not completely fill out this form, or fail to submit required documents listed in the instructions, you may not be found eligible for the requested document and this application may be denied.*

**Part 5.  Signature of person preparing form if other than above.**    *(Sign Below)*

I declare that I prepared this application at the request of the above person and it is based on all information of which I have knowledge.

| Signature | Print Your Name | Date | Daytime Phone Number |
|---|---|---|---|
| | | | |

Firm Name
and Address



# EXHIBIT C

U.S. Department of Homeland Security
P.O. Box 82521
Lincoln, NE 68501-2521



**U.S. Citizenship
and Immigration
Services**

February 22, 2008

Refer To File No. LIN0206651086

A072664182

NOORULLAH KHAN
21239 GARY DRIVE
HAYWARD CA 94546

Dear Sir or Madam:

RE: Form: I485  APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS
    Beneficiary:    KHAN, NOORULLAH

## Decision

This notice refers to your Form I-485, Application to Register Permanent Residence or Adjust Status, filed with this office on December 14, 2001. You are requesting adjustment of status under Section 209(b) of the Immigration and Nationality Act (INA) (Title 8, united States Code, section 1159).

Section 209(b) of the INA states:

The Secretary of Homeland Security or the Attorney General, in the Secretary's or the Attorney General's discretion and under such regulations as the Secretary or the Attorney General may prescribe, may adjust to the status of an alien lawfully admitted for permanent residence the status of any alien granted asylum who—
   (1) applies for such adjustment,
   (2) has been physically present in the United States for at least one year after being granted asylum,
   (3) continues to be a refugee within the meaning of section 101(a)(42)(A) or a spouse or child of such a refugee,
   (4)  is not firmly resettled in any foreign country, and
   (5) is admissible (except as otherwise provided under subsection (c)) as an immigrant under this Act at the time of examination for adjustment of such alien.

Matter of K-A-, 23 I & N Dec. 661, 666 (BIA 2004) (relief under section 209(b) of the INA is discretionary).

The INA section 209(c) waiver of inadmissibility is not available to aliens who are inadmissible under INA section 212(a)(3)(B) (terrorist activities).

Section 212(a)(3)(B) of the INA, as amended by the REAL ID Act of 2005, describes an alien who is inadmissible and states in pertinent part:

(i) In general.  Any alien who-
   (I) has engaged in a terrorist activity,
   (II) a consular officer, the Attorney General, or the Secretary of Homeland Security knows, or has reasonable ground to believe, is engaged in or is likely to engage after entry in any terrorist activity (as defined in clause (iv));
   (III) has, under circumstances indicating an intention to cause death or serious bodily harm, incited terrorist activity;

Nebraska Service Center                                                          www.uscis.gov

(IV) is a representative (as defined in clause (v)) of--

    (aa) a terrorist organization (as defined in clause (vi)); or

    (bb) a political, social, or other group that endorses or espouses terrorist activity;

(V) is a member of a terrorist organization described in subclause (I) or (II) of clause (vi);

(VI) is a member of a terrorist organization described in clause (vi)(III), unless the alien can demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization;

(VII) endorses or espouses terrorist activity or persuades others to endorse or espouse terrorist activity or support a terrorist organization;

(VIII) has received military-type training (as defined in section 2339D(c)(1) of title 18, United States Code) from or on behalf of any organization that, at the time the training was received, was a terrorist organization (as defined in clause (vi)); or

(IX) is the spouse or child of an alien who is inadmissible under this subparagraph, if the activity causing the alien to be found inadmissible occurred within the last 5 years, is inadmissible.

(iii) Terrorist activity defined. As used in this Act, the term "terrorist activity" means any activity which is unlawful under the laws of the place where it is committed (or which, if it had been committed in the United States, would be unlawful under the laws of the United States or any State) and which involves any of the following:

(I) The highjacking or sabotage of any conveyance (including an aircraft, vessel, or vehicle).

(II) The seizing or detaining, and threatening to kill, injure, or continue to detain, another individual in order to compel a third person (including a governmental organization) to do or abstain from doing any act as an explicit or implicit condition for the release of the individual seized or detained.

(III) A violent attack upon an internationally protected person (as defined in section 1116(b)(4) of title 18, United States Code) or upon the liberty of such a person.

(IV) An assassination.

(V) The use of any-

    (a) biological agent, chemical agent, or nuclear weapon or device, or

    (b) explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.

(VI) A threat, attempt, or conspiracy to do any of the foregoing.

(iv) Engage in terrorist activity defined. As used in this chapter, the term "engage in terrorist activity" means, in an individual capacity or as a member of an organization-

(I) to commit or to incite to commit, under circumstances indicating an intention to cause death or serious bodily injury, a terrorist activity;

(II) to prepare or plan a terrorist activity;

(III) to gather information on potential targets for terrorist activity;

(IV) to solicit funds or other things of value for--

    (aa) a terrorist activity;

    (bb) a terrorist organization described in clause (vi)(I) or (vi)(II); or

    (cc) a terrorist organization described in clause (vi)(III), unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization;

(V) to solicit any individual--

    (aa) to engage in conduct otherwise described in this subsection;

    (bb) for membership in a terrorist organization described in clause (vi)(I) or (vi)(II); or

    (cc) for membership in a terrorist organization described in clause (vi)(III) unless the solicitor can demonstrate by clear and convincing evidence that he did not know, and should not reasonably have known, that the organization was a terrorist organization; or

(VI) to commit an act that the actor knows, or reasonably should know, affords material support, including a

safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training--

  (aa) for the commission of a terrorist activity;

  (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity;

  (cc) to a terrorist organization described in subclause (I) or (II) of clause (vi) or to any member of such an organization; or

  (dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

(v) Representative defined. As used in this paragraph, the term "representative" includes an officer, official, or spokesman of an organization, and any person who directs, counsels, commands, or induces an organization or its members to engage in terrorist activity.

(vi) Terrorist organization defined. As used in clause (i)(VI) and clause (iv), the term 'terrorist organization' means an organization--

  (I) designated under section 219;

  (II) otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or

  (III) that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

You indicated during your asylum application and interview that you were a member of the Harakat-E-Islami from 1985 until you left the country in 1993. You also stated that for several years you served as a body guard to the leader of the group. You additionally stated that when the Russians invaded Afghanistan in December 1979 you decided to fight them and joined Hizb-I-Islami, but due to ideological differences, you left the Hizb-I-Islami and joined Harakat-e-Inquilab-e-Islami under the leadership of Maulavi Nasrullah Mansoor. You stated that as part of your duties, you use to guard the posts along with other Mujahideen and took part in the fight.

The INA, at section 212(a)(3)(B)(vi)(III), defines a terrorist organization as an organization that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

The Memorial Institute for the Prevention of Terrorism (MIPT) is a non-profit organization dedicated to preventing terrorism on U.S. soil or mitigating its effects. MIPT was established after the April 1995 bombing of the Murrah federal building in Oklahoma City, and it is funded through the Department of Homeland Security's Office of Grants and Training (G&T). According to public information on www.tkb.org, Hizb-I Islami Gulbuddin (HIG) emerged in 1977 as a radical faction of the Hizb-I Islami party. This group seeks to liberate Afghanistan from the influence of foreign forces, overthrow the Afghan government, and establish a fundamentalist Islamic state. HIG was known to be one of the most radical mujahidin groups in the Afghan resistance during the Soviet occupation. The group had close ties to the Taliban and Osama bin Laden during this period, and the Taliban and al-Qaeda continue to operate in the same spheres as HIG. In the early 1990s, HIG founder Gulbuddin Hikmatyar was known to have operated several terrorist training camps in Afghanistan. After training, terrorists would be sent to assist mujahidin in other hotbeds of religious conflict. Since the United States-led coalition invaded Afghanistan in 2001, Hizb-I Islami Gulbuddin (HIG) has led terrorist attacks against the United States, its coalition partners, and the Afghan Transitional Administration (ATA). In addition to attacking coalition forces and Afghan government targets, HIG has attacked the personnel and facilities of the United Nations and NGOs as well. The group is considered to be an active threat.

Receipt Number: LIN0206651086                    Page 4

The Department of State, Country Reports on Terrorism, Released by the Office of the Coordinator for Counterterrorism, April 30, 2007 further provides that HIG's leader, Hikmatyar, offered to shelter bin Ladin after the latter fled Sudan in 1996 and has consistently offered public support for him since the 9/11 attacks. Hikmatyar has issued regular statements on the need for Afghans to reject the international community's presence in their country. In 2005, he responded to protests against Danish cartoons of the prophet Mohammad with a new call for the expulsion of international troops from Afghanistan.

Due to the activities and objectives of the Hizb-I Islami Gulbuddin, it meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of the HIG match those described in section 212(a)(3)(B)(iii) and 212(a)(3)(B)(iv).

The INA, at section 212(a)(3)(B)(vi)(III), defines a terrorist organization as an organization that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

The Program for Culture & Conflict Studies (CCS) conducts research in support of the Human Terrain System (HTS) Initiative. Their research provides comprehensive assessments of provincial and district tribal and clan networks in Afghanistan, anthropological assessments of Afghan villages, and assessments of the operational culture of Afghan districts and villages. Under the direction of Naval Postgraduate School Professor Thomas H. Johnson and coordination of the Department of National Security Affairs, CCS provides anthropological information and assessments to military personnel, academics, and the general public since 2007. Faculty members regularly hold conferences, workshops and briefs to deploying troops, as part of the Regional Security Education Program (RSEP) and Leadership Development & Education for Sustained Peace (LDESP).

According to public information on http://www.nps.edu, Harakat-e Islami (NUF) is a Shi'a party originally led by Muhammad Asif Muhsini. The Harakat-e Islami fought the Soviets with support from Tehran. Known for having many Hazara as well as non-Hazara members, this Shi'ite party refused to join the Hazara coalition Hizb-i Wahdat in the ensuing civil war. Since 2005 they have been led by Hojjatolislam Seyyed Muhammad Ali Jawed, a minister in Karzai's first cabinet.

Human Rights Watch is dedicated to protecting the human rights of people around the world. They stand with victims and activists to prevent discrimination, to uphold political freedom, to protect people from inhumane conduct in wartime, and to bring offenders to justice. They investigate and expose human rights violations and hold abusers accountable. They challenge governments and those who hold power to end abusive practices and respect international human rights law. They enlist the public and the international community to support the cause of human rights for all. Human Rights Watch is an independent, nongovernmental organization, supported by contributions from private individuals and foundations worldwide. It accepts no government funds, directly or indirectly. According to public information on http://www.hrw.org, Harakat-e Islami-yi Afghanistan (hereafter "Harakat"), was a Shia political party and mujahideen force founded in the early 1980s. The Harakat-e Islami party was headed for most of the 1980s by Mohammad Asef Mohseni (a cleric who participated in the June 2002 Loya Jirga). Harakat received substantial support from Iran in the early 1990s. Harakat, like Wahdat, is now fractured. One faction is led by Mohseni, a second splinter is led by a military commander Sayeed Hossein Anwari (now the Agricultural Minister), and a third is led by Sayeed Mohammad Ali Javeed (now the Minister of Transportation).

According to public information on http://www.dos.gov, Afghan freedom fighters (mujahidin) made it almost impossible for the Soviet communist regime to maintain a system of local government outside major urban centers. Poorly armed at first, in 1984 the mujahidin began receiving substantial assistance in the form of weapons and training from the U.S. and other outside powers. In May 1985, the seven principal Peshawar-based guerrilla organizations formed an alliance to coordinate their political and military operations against the Soviet occupation. Late in 1985, the mujahidin were active in and around Kabul, launching rocket attacks and

Receipt Number: LIN0206651086                    Page 5

conducting operations against the communist government. The failure of the Soviet Union to win over a significant number of Afghan collaborators or to rebuild a viable Afghan army forced it to bear an increasing responsibility for fighting the resistance and for civilian administration.

Due to the activities and objectives of the Harakat-E-Islami, it meets the current definition of an undesignated terrorist organization at INA section 212(a)(3)(B)(vi)(III). The violent activities of the Harakat-E-Islami match those described in section 212(a)(3)(B)(iii) and 212(a)(3)(B)(iv).

You indicated that you have been a member of both Hizb-I-Islami and Harakat-E-Islami both of whom meet the definition of an undesignated terrorist organization as described in section 212(a)(3)(B)(vi)(III). You are inadmissible for having engaged in a terrorist activity by committing a terrorist activity under 212(a)(3)(B)(iv)(I) and for affording material support to a Tier III terrorist organization or member under section 212(a)(3)(B)(iv)(VI)(dd).

Accordingly, your application must be and hereby is denied. The regulations do not provide for an appeal to this decision.

Sincerely,

F. Gerard Heinauer
Director
NSC/LDF EX398